James **DANIELS** et al., Petitioners,

v.

Walter **ZANT**, Warden of the Georgia Diagnostic & Classification Center, et al., Respondents.

Civ. A. Nos. 79–110–Mac, 74–139–Mac, et seq.

United States District Court, M. D. Georgia, Macon Division.

June 27, 1980.

Thomas West, Ralph Goldberg, Atlanta, Ga., Albert M. Pearson, Athens, Ga., for petitioners.

Arthur K. Bolton, Atty. Gen., Harrison Kohler, Asst. Atty. Gen., Atlanta, Ga., for respondents.

OWENS, District Judge:

This court—the United States District Court for the Middle District of Georgia—is one of 95 United States District Courts created by Congress pursuant to the authority given Congress by Article III of the Constitution. Congress assigns each of our 95 district courts a particular geographical area to be responsible for—this court is assigned 70 of Georgia's 159 counties—and by passing laws determines the types of case, civil and criminal, that are to be heard in our district courts. When Congress by law says that a particular case may be heard in a district court and such a case is commenced, it then becomes the responsibility and duty of the court in the person of its judges to consider and decide the case.

Among the laws passed by Congress specifying types of cases that may be filed in a district court is 42 United States Code 1983, which provides:

§ 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Butts County is one of the 70 counties assigned to this court. Located in that county is one of the State's penitentiaries known as the Georgia Diagnostic and Classification Center. In addition to receiving, processing, and classifying all new prisoners for the State's entire prison system, the diagnostic and classification center also houses a large number of Georgia's 96 prisoners now under sentence of death and a substantial number of other prisoners believed by the State to be incorrigible or dangerous to themselves or others. The wing of the center in which death row prisoners and incorrigibles are imprisoned is known as "H–House".

Until June 25, 1980, these cases were proceeding as class actions in which a group of named Jackson prison inmates in behalf of all incorrigible and death row prisoners confined in Jackson's "H–House", were contesting the overall conditions under which incorrigible and death row prisoners are kept at Jackson. They have been contending that those conditions are so terrible and inhumane as to constitute the cruel and unusual punishment that is prohibited by the Eighth Amendment to the Constitution of the United States.

JACK HOWARD POTTS is one of Georgia's 96 death sentence prisoners. Until sometime in June he was confined on death row at the Georgia State Prison at Reidsville awaiting execution in Georgia's electric chair then located at Reidsville. In June the electric chair was moved to Jackson and so was Jack Potts. His execution is to take place next Tuesday, July 1.

Jack Potts has been tried and convicted in Cobb and Forsyth Counties for brutal murders. He unsuccessfully appealed those convictions and his sentences of death to the Georgia Supreme Court and then pursuant to the laws of this state began a new attack by filing a petition for a writ of habeas corpus in the Superior Court of Tattnall County. He lost in that superior court and filed an appeal to the Supreme Court of Georgia. Before that appeal was decided, Potts on December 6, 1979, discharged the attorneys handling his appeal and declared his intention of not pursuing any further available avenues of appeal. Nevertheless the Supreme Court of Georgia decided against Potts. No further legal proceedings attacking his conviction were pursued by Potts and ultimately his death sentence was ordered to be carried out on June 5, 1980.

Among the available avenues of attack that Potts said he was not going to pursue is the procedure provided for in the federal habeas corpus statute which as passed by Congress permits any state prisoner after he has completed all appeals permitted by state law, to come into United States District Court and attack his already appealed

in state court conviction on the ground that he was convicted in violation of the Constitution and laws of the United States. Since state prisoners have a right to proceed in United States District Court under the habeas statute and since their sentence of death is not technically final until their habeas case has been finally determined, death sentence prisoners can't be executed until their conviction and death sentence have survived attack in United States District Court and appeal to a United States Court of Appeals. If for no other reason, a federal habeas proceeding delays the inevitable and is therefore routinely pursued by death sentence prisoners.

Several days before Potts June 5 scheduled execution, two habeas petitions were filed in the United States District Court for the Northern District of Georgia—that United States District Court has jurisdiction of the Georgia counties in which Potts was tried, convicted and sentenced to death. As is shown by exhibits on file, that United States District Court temporarily stayed Potts execution of June 5 and subsequently upon request of Potts dismissed his habeas proceeding and vacated its stay. The state courts again scheduled Potts' execution, this time for July 1. On Wednesday, June 25, Potts appeared again in United States District Court for the Northern District of Georgia pursuant to the said federal habeas statute and attempted to once again delay his execution. That court refused his motion for a stay and as of this writing no appellate court has disturbed that ruling. Potts is therefore still scheduled for execution on next Tuesday, July 1, in Georgia's electric chair at Jackson.

On June 25 the plaintiff prisoners in these civil actions challenging the constitutionality of the conditions under which all death row and incorrigible prisoners are being held at Jackson, filed a motion for a preliminary injunction to stop the execution of Jack Potts. They say that death row conditions are so violative of the Eighth Amendment—so intolerable—as to cause Potts' will to live and pursue his unavailed of federal habeas remedies, to be overborne and further say that those conditions constitute legal duress. This court, they suggest, should not permit Potts or any other death row prisoner to surrender his life to the death chair until those inhumane conditions have been remedied and Potts after living under constitutional conditions has again affirmed his wish to abandon his legal remedies and be executed. The State answers that Potts federal habeas case has been decided in the Northern District of Georgia and that there is neither a constitutional nor legal reason for this court to interfere.

On Thursday, June 26, the parties were heard from at great length. Evidence and argument having been considered this constitutes the court's order as to all relief prayed for in this motion.

In spite of the sincere efforts of the well-meaning lawyers and witnesses who endeavored to find facts and law to justify this novel approach for stopping an execution, this motion viewed realistically and with a large measure of common sense, is nothing more than an effort of these death row and incorrigible prisoners to indirectly [1] do for Potts what they believe he should be but is not doing for himself—stop his execution. Neither the Constitution nor the laws give these prisoners the right to ask for injunctive relief for Jack Potts under either 28 U.S.C. § 2254 or 42 U.S.C. § 1983.[2] Jack Potts' execution will neither directly nor indirectly affect the ability of these prisoners or this court to remedy unconstitutional conditions that may exist at this penitentiary. This court has neither the authority nor the inclination to interfere with and will not interfere with Jack Potts' execution.

SO ORDERED.

1. *See Preiser v. Rodriquez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), on the basis of which the court construes this motion as a motion for habeas relief. Habeas relief having been considered and denied in the Northern District of Georgia, it could not be pursued in this court even if Potts himself became a named party to this lawsuit or even if these prisoners had next friend status, neither of which is the case.

2. Viewed alternatively as a motion for § 1983 relief, there is no basis known to this court for the granting of such relief.